TRACY A. WARREN (SBN: 228013)
ALISSA R. PLEAU-FULLER (SBN: 258907)
CHRISTINA M. MORGAN (SBN: 277877)
**BUCHALTER**
655 West Broadway, Suite 1600
San Diego, CA 92101
Telephone: 619.219.5335
twarren@buchalter.com
apleaufuller@buchalter.com
cmorgan@buchalter.com

Attorneys for Plaintiff
APPTECH PAYMENTS CORP.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPTECH PAYMENTS CORP.<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER LEYVA, individually and as the trustee of THE LEYVA FAMILY TRUST; and DOES 1-30, inclusive,<br><br>    DEFENDANTS. | CASE NO.3:25-cv-02946-JO-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF APPTECH PAYMENTS CORP.'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Dept:<br>Judge: Hon. |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................... 7

II. FACTUAL AND PROCEDURAL BACKGROUND.................................. 7

    A.  Plaintiff's Business ..................................................................... 7

    B.  Alliance's Business ..................................................................... 8

    C.  Plaintiff's Confidential and Proprietary Information ................. 8

    D.  Leyva's Employment Agreements with Plaintiff ..................... 10

    E.  AppTech Terminates Leyva for Cause ..................................... 12

    F.  AppTech Learns of Leyva's Unauthorized Acquisition of Plaintiff's Proprietary Information ........................................... 12

III. LEGAL ARGUMENT ............................................................................ 14

    A.  Legal Standard for Injunctions and Temporary Restraining Orders .. 14

    B.  First Formation: AppTech is Likely Succeed on the Merits of its Claims ................................................................................ 15

        1.  Trade Secret Misappropriation Claims .......................... 16

        2.  Fraud – Intentional Misrepresentation Claim ............... 22

        3.  Negligent Misrepresentation Claim ............................... 22

        4.  Conversion Claim ........................................................... 23

        5.  Unlawful and Unfair Business Practices Claim ............. 23

        6.  California Penal Code Section 502 Claim ...................... 24

        7.  Breach of Contract Claim ............................................... 25

    C.  Risk of Immediate, Irreparable, and Substantial Harm to Plaintiff .... 26

    D.  Balance of Equities Unequivocally Tips in Plaintiff's Favor ............ 29

    E.  The Sought Injunction Serves the Public Interest................................ 30

    F.  Notice to Leyva is Unwarranted Under the Circumstances................ 30

    G.  No Security or a Minimal Security Should Issue ................................. 31

IV. CONCLUSION ..................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&A Int'l Apparel, Inc. v. XuI*
(C.D. Cal., Jan. 29, 2015, No. CV 15–644–GW(AGRX)) 2015 WL
12850544 ..................................................................................................30

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
819 F.Supp.2d 1001 (E.D. Cal. 2011) ....................................................15

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .................................................................30

*Alta Devices, Inc. v. LG Electronics, Inc.*,
343 F.Supp.3d 868 (N.D. Cal. 2018)..................................................17, 19

*Amoco Production Co. v. Village of Gambell, AK*,
480 U.S. 531 (1987) .................................................................................29

*ASDI, Inc. v. Beard Research, Inc.*,
11 A.3d 749 (Del. 2010) ...........................................................................18

*Beard Research, Inc. v. Kates*,
8 A.3d 573 (Del. Ch. 2010) ......................................................................18

*CDF Firefighters v. Maldonado*,
158 Cal.App.4th 1226 (2008)...................................................................25

*Central Valley General Hospital v. Smith*,
162 Cal.App.4th 501 (2008).....................................................................20

*Chapman v. Skype Inc.*,
220 Cal.App.4th 217 (2013)......................................................................22

*City and Cnty. of San Francisco v. United States Citizenship and
Immigration Serv.*,
944 F.3d 773 (9th Cir. 2019) ...................................................................15

*Courtesy Temporary Service, Inc. v. Camacho*,
222 Cal. App. 3d 1278, 1287 (1990)........................................................20

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

BUCHALTER 106271460v3                    3
**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
    444 F.Supp.3d 1198 (E.D. Cal. 2020) ........................................................ 16, 18

*Engility Corporation v. Daniels*,
    No. 16-CV-2473-WJM-MEH, 2016 WL 7034976 (D. Colo., Dec.
    2, 2016) .................................................................................................................... 16

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
    2010 WL 338219 (Del. Ch. Jan. 29, 2010) ........................................................ 20

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*,
    171 Cal.App.4th 939 (2009) ................................................................................. 24

*Lillge v. Verity*,
    No. C 07-2748 MHP, 2007 WL 2900568 (N.D. Cal. Oct. 2, 2007) ................ 28

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*,
    887 F. Supp. 1320 (N.D. Cal. 1995) .................................................................... 15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ............................................................................... 15

*Morlife, Inc. v. Perry*,
    56 Cal.App.4th 1514, 1522 (1997) ..................................................................... 20

*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*,
    171 Cal.App.4th 35 (2009) ................................................................................... 22

*Nucar Consulting, Inc. v. Doyle*
    (Del. Ch., Apr. 5, 2005) 76 U.S.P.Q.2d 1087, aff'd (Del. 2006) 913
    A.2d 569 .................................................................................................................. 20

*Oakwood Laboratories LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021) ................................................................................. 19

*In re Patriot National Inc.*,
    592 B.R. 560 (Bankr. D. Del. 2018) .................................................................... 19

*Pyro Spectaculars North, Inc. v. Souza*,
    861 F.Supp.2d 1079 (E.D. Cal. 2012) ................................................................ 29

*Readylink Healthcare v. Cotton*,
   126 Cal.App.4th 1006 (2005)................................................................20, 22

*Regent Alliance Ltd. v. Rabizadeh*,
   231 Cal.App.4th 1177 (2014).......................................................................23

*Reno Air Racing Ass'n, Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006).....................................................................15

*Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,
   2017)...........................................................................................................17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001).......................................................................26

*Technicon Data Sys. Corp. v. Curtis 1000, Inc*,
   1984 WL 8268.............................................................................................20

*TMX Funding, Inc. v. Impero Techs., Inc.*,
   2010 WL 1028254 (N.D. Cal. Mar. 18, 2010)...........................................28

*Total Care Physicians, P.A. v. O'Hara*,
   2002 WL 31667901 (Del. Super. Ct. Oct. 29, 2002)................................20

*W. Directories, Inc. v. Golden Guide Directories, Inc.*,
   2009 WL 1625945 (N.D. Cal. June 8, 2009)..............................................28

*WeRide Corp. v. Kun Huang*,
   379 F.Supp.3d 834 (N.D. Cal. 2019), modified in part (N.D. Cal.,
   Nov. 5, 2019, No. 5:18-CV-07233-EJD) 2019 WL 5722620....................19

*ZRii, LLC v. Wellness Acquisition Group, Inc.*
   (Del. Ch., Sept. 21, 2009, No. CIV. A. 4374-VCP) 2009 WL
   2998169......................................................................................................20

**Statutes**

6 Del. C. § 2001(2)(b)....................................................................................19

6 Del. C. § 2001, *et seq.*................................................................................16

6 Del. C. § 2002.............................................................................................21

6 Del. C. § 2002(4).........................................................................................17

BUCHALTER

A PROFESSIONAL CORPORATION

SAN DIEGO

BUCHALTER 106271460v3

5

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

18 U.S.C. §§ 1836, *et seq.* ................................................................ 16

18 U.S.C. § 1839 ................................................................................ 21

18 U.S.C. § 1839(3) ........................................................................... 17

18 U.S.C. § 1839(5) ...................................................................... 17, 18

Cal. Bus & Prof. Code §§ 17200, *et seq.* ................................... 16, 24

Cal. Bus. & Prof. Code § 17203 ....................................................... 24

Cal. Civ. Code § 3246(b) ................................................................. 21

Cal. Civ. Code §§ 3426, *et seq.* ...................................................... 16

Cal. Civ. Code § 3426.1(b) .............................................................. 18

Cal. Civ. Code § 3426.1(d) .............................................................. 17

Cal. Civ. Code § 3426.2 ................................................................... 20

Cal. Civ. Code § 3426.2(a) .............................................................. 21

Cal. Civ. Code § 3426.3 ................................................................... 21

Cal. Pen. Code § 502 ............................................................ 16, 24, 25

Cal. Pen. Code § 502(c)(1) ............................................................... 24

Cal. Pen. Code § 502(c)(5) ............................................................... 25

**Other Authorities**

Fed. R. Civ. P. 65 ............................................................................. 30

Fed. R. Civ. P. 65(c) ........................................................................ 31

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

# I.    **INTRODUCTION**

A disloyal employee committed a wholesale misappropriation of his employer's confidential and proprietary business information and trade secrets in order to purloin and sabotage the employer's operations and form a separate and competing venture.   Unbeknownst to plaintiff APPTECH PAYMENTS CORP. ("AppTech" or "Plaintiff"), Defendant CHRISTOPHER LEYVA ("Leyva") laid the groundwork for his scheme by negotiating the sale of his software development company, ALLIANCE PARTNERS, LLC ("Alliance"). AppTech eventually learned of Leyva's subterfuge, confronted him, and terminated his employment.   Leyva responded by ████████████████████████████████████████████
████████████████████████████████████████.

Therefore, AppTech requires emergency relief to stop Leyva's misappropriation of its trade secrets and unlawful and unfair business practices. Without immediate injunctive relief, Leyva will be allowed to exploit Plaintiff's trade secrets and create an existential and imminent threat ██████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████████.

# II.    **FACTUAL AND PROCEDURAL BACKGROUND**

## A.    **Plaintiff's Business**

AppTech is a Fintech company headquartered in Carlsbad, California. (Declaration of Tom DeRosa ("DeRosa Decl."), ¶ 4.)  It utilizes innovative payment processing and digital banking technologies to complement its core merchant services capabilities. (*Id.*)  AppTech's patented and proprietary software provides progressive and adaptable products that are available through a suite of synergistic offerings directly to merchants, banking institutions, and business enterprises. (*Id.*, ¶

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

5.)  AppTech offers merchant transaction services, processing payments for credit and debit cards through point-of-sale equipment, e-commerce gateways, periodic automatic clearing house payments, and gift and loyalty programs.  (*Id.*, ¶ 6.)

## B.    Alliance's Business

Prior to its acquisition by AppTech, Alliance was a Nevada-based software development company that did business as FinZeo.  (DeRosa Decl., ¶ 17.)  Leyva was the sole member of Alliance until AppTech acquired the LLC.  (*Id.*)

## C.    Plaintiff's Confidential and Proprietary Information

AppTech has established itself as a specialty payments company with a unique digital platform that powers seamless commerce experiences. (DeRosa Decl., ¶ 7.) It develops proprietary technologies and software, which rely on confidential source code. (*Id.*) The specialty payments market is highly competitive and relies heavily upon establishing goodwill with the customers over extended period of time, and specifically, developing strong commercial and personal relationships with customers.  (*Id.*, ¶ 8.)  AppTech has 12 years of experience and intelligence, proprietary, and trade secret data vested with the company—information that is not generally known to the public.  (*Id.*, ¶ 9.)  AppTech's trade secrets and confidential and proprietary information at issue in this case include ███████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

---

[1] The U.S. central bank's real-time electronic funds transfer system for high-value, time-critical payments.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████ (collectively, "Proprietary

3 Information"). (DeRosa Decl., ¶ 61.) AppTech has expended considerable time,

4 money, human capital, and other resources and taken risks to acquire and develop its

5 Proprietary Information. (*Id.*, ¶ 10.) The Proprietary Information is unique to

6 AppTech, and AppTech takes the protection of the same seriously. (*Id.*) AppTech

7 has put several substantial security measures in place to protect its Proprietary

8 Information. (*Id.*, ¶ 11; Declaration of Anthony Shall ("Shall Decl."), ¶ 5.)

9 These measures include cybersecurity procedures, including computer

10 passwords, routine password changes, and computer event logs; remote wiping of

11 company phones and laptops; employee exit interviews; employee agreements

12 requiring the return of company documents and other property upon separation;

13 nondisclosure and confidentiality agreements; physical security; visitor protocols;

14 facility logs; locked file cabinets; and restricted business premises access. (DeRosa

15 Decl., ¶ 12; Shall Decl., ¶ 8.) In addition, access to the Proprietary Information is

16 conditioned on use solely by certain employees that specifically are working on those

17 projects and key executives. (DeRosa Decl., ¶ 13.) Only AppTech professionals and

18 certain key employees are issued login credentials and may only use them to support

19 AppTech's business. (*Id.*) All other uses are unauthorized and forbidden. (*Id.*)

20 Furthermore, AppTech employees are not allowed to share passwords with other

21 colleagues, much less with third-parties. (*Id.*, ¶ 14.)

22 Additionally, AppTech has additionally established strict rules and policies

23 restricting its employees' use of AppTech's Proprietary Information maintained on

24 its computer systems and servers. (DeRosa Decl., ¶ 15.) AppTech takes precautions

25 to ensure the confidentiality of the Proprietary Information stored on its drives and

26 servers. (*Id.*, ¶ 16.) These protections include the following:

27 a. ███████████████████████████████████████████████.

28 b. ███████████████████████████████████████████████

1 █████████████████████████.

2 c. ██████████████████████████████

3 █████████████████████████████.

4 d. ██████████████████████████████

5 ███████████████████████████████████

6 ███████████████████████████████████

7 ████████████████████.

8 e. ██████████████████████████████

9 ███████████████████████████████████

10 ████████████████████.

11 f. ██████████████████████████████

12 █████████████████████████.

13 g. ██████████████████████████████

14 ███████████████████████████████████

15 ███████████████████████████████████

16 ███████████████████████████████████

17 █████.

18 h.    Without getting into the details, █████████████████

19 █████████████████████████████    █████████

20 ██████████████████████████.

21 (DeRosa Decl., ¶ 16.)

22 **D.    Leyva's Employment Agreements with Plaintiff**

23 As part of the transaction between AppTech and Leyva, ████████

24 ███████████████████████████████████

25 ███████████████████████████████████

26 █████████████████████. (DeRosa Decl., ¶ 30; Shall Decl., ¶ 10.)

27 Leyva signed an agreement with AppTech outlining the terms, conditions, and

28 requirements for his employment with the company on October 26, 2023 (the

BUCHALTER
A Professional Corporation
San Diego

BUCHALTER 106271460v3                                10

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

"Executive Agreement").  (DeRosa Decl., ¶ 31, <u>Exh. 6</u>; Shall Decl., ¶¶ 11, 13-17.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████.  (*Id.*, ¶¶ 18-19, <u>Exhs. 2 and 3</u>.)  Leyva worked remotely from his home in Reno, Nevada during his employment. (DeRosa Decl., ¶ 32.)

Through Leyva's employment, ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████.  (DeRosa Decl., ¶ 33.)  Leyva was provided

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████  ████████████████  ██████████████

██████████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

customers' buying patterns, their specific product preferences and amounts they pay. (*Id.*, ¶ 36.) This information would allow a competitor to target specific customers with detailed information that it has not had to develop on its own. (*Id.*) Gathering such information is an arduous and time-consuming task. (*Id.*)

This information would enable a competitor to solicit AppTech's customers by targeting them more selectively and effectively. (DeRosa Decl., ¶ 37.) Importantly, ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. (*Id.*)

**E.    AppTech Terminates Leyva for Cause**

Leyva failed to fulfill several of his responsibilities under the Executive Agreement. (DeRosa Decl., ¶ 52; Declaration of Bonne Leong ("Leong Decl."), ¶¶ 8-15.) Rather than devote his time and energy to AppTech, ██████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████  █████ ████████████████████████████████████████████████████ █████████████████████. (DeRosa Decl., ¶ 52.)

Following Leyva's termination, AppTech learned ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████. (*Id.*, ¶ 62.)

**F.    ** ████████████████████████████████████████████ █████████████████████████████████████████

Just this week, AppTech ████████████████████████████████████████

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ██████████████████████████. (*Id.*, ¶ 82.)

6  ████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████. (*Id.*)

26 Therefore, when Leyva instructed ███████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████████████████████. (DeRosa Decl., ¶ 88.)

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████. (*Id.*, ¶ 80.) Therefore,

21 to protect Plaintiff's Proprietary Information and prevent unfair and unlawful

22 competition and business practices, Plaintiff requests that this Court intervene and

23 grant its request to restrain Leyva from disclosing Plaintiff's Proprietary Information.

## III.    LEGAL ARGUMENT

### A.    Legal Standard for Injunctions and Temporary Restraining Orders

The purpose of a temporary restraining order and preliminary injunction is to

preserve the status quo and the rights of the parties until a final judgment is issued.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

BUCHALTER 106271460v3                    14
**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

*See City and Cnty. of San Francisco v. United States Citizenship and Immigration Serv.*, 944 F.3d 773, 789 (9th Cir. 2019); *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A preliminary injunction can take two forms:" a mandatory injunction orders a responsible party to take action whereas "a prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). Here, Plaintiff only requests a prohibitory injunction to preserve the status quo.

"Injunctions in the area of trade secrets are governed by the principles applicable to injunctions in general." *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F.Supp.2d 1001, 1014 (E.D. Cal. 2011) (internal citations and quotations omitted). To obtain preliminary injunctive relief in this context, "the moving party must show either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Id.* (internal citations and quotations omitted). "The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown." *Id.* Thus, "[t]he greater the relative hardship to a plaintiff, the less probability of success must be shown." *Id.* (internal brackets, citations, and quotations omitted). "Under either formation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id.* (internal citations and quotations omitted). Here, Plaintiff can demonstrate a significant threat of irreparable injury under both formations.

### B.   First Formation: AppTech is Likely Succeed on the Merits of its Claims

The Complaint presents a lamentably common scenario: a ███████████████



Here, the Complaint and its exhibits demonstrate AppTech's likelihood of success on the merits with respect to its claims under California and federal trade secrets law. *See Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F.Supp.3d 1198, 1204 (E.D. Cal. 2020) ("*Cutera*"), citing *Engility Corporation v. Daniels*, No. 16-CV-2473-WJM-MEH, 2016 WL 7034976, at *8 (D. Colo., Dec. 2, 2016).

Specifically, even at this early stage, the evidence establishes that [REDACTED]. Plaintiff's claims are for (1) Misappropriation of Trade Secrets (18 U.S.C. section 1836, *et seq.*), (2) Violation of the California Uniform Trade Secrets Act (California Civil Code section 3426, *et seq.*), (3) Intentional Misrepresentation, (4) Negligent Misrepresentation, (5) Conversion, (6) Unfair Business Practices (California Business & Professions Code section 17200, *et seq.*), (7) Violation of California Penal Code section 502, and (8) Breach of Contract, as further discussed herein. *See generally*, Complaint.

**1.    Trade Secret** [REDACTED]

Injunctive relief is specifically authorized for [REDACTED]. Each of these statutory schemes define trade secrets similarly.

[REDACTED]

---

[2] Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* ("DTSA").
[3] California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426, *et seq.* ("CUTSA").
[4] Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001 et seq. ("DUTSA").

BUCHALTER
A Professional Corporation
San Diego

BUCHALTER 106271460v3    16
PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

The DTSA defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" where "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information…." 18 U.S.C. § 1839, subd. (3). The CUTSA governs trade secret misappropriation claims under California state law. The CUTSA similarly defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Civ. Code, § 3426.1, subd. (d).

The DUTSA governs trade secret misappropriation claims under Delaware state law. It defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process, that (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 6 Del. C. § 2002(4).

To prevail on a claim for trade secret misappropriation under the DTSA, a plaintiff must demonstrate that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp.3d 868, 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)); *see also* 18 U.S.C. § 1839, subd. (5). Additionally, "[t]o

establish a violation of the CUTSA, a plaintiff must show (1) the existence of a trade secret, and (2) misappropriation of the trade secret." *Cutera*, *supra*, 444 F.Supp.3d at 1205 (internal citations and quotation marks omitted). A trade secret misappropriation claim under the DUTSA must also satisfy these same elements. *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 589 (Del. Ch. 2010), aff'd sub nom. *ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010). Plaintiff will likely satisfy each of the elements for each of these statutes.

An employer's trade secrets are a protectable interest under federal and California and Delaware state law. "The CUTSA defines misappropriation as including the '[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' and the 'use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret.'" *Cutera*, *supra*, 444 F.Supp.3d at 1207, quoting in part Civ. Code, § 3426.1, subd. (b) (internal brackets omitted). "Misappropriation under the DTSA is identical to that under the CUTSA in this respect." *Cutera*, *supra*, 444 F.Supp.3d at 1207; *see also* 18 U.S.C. § 1839(5).

Additionally, the DUTSA defines trade secret misappropriation as "[a]quisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "[d]isclosure or use of a trade secret of another without express or implied consent by a person who [¶] [u]sed improper means to acquire knowledge of the trade secret; or [¶] [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was: [¶] (A) Derived from or through a person who had utilized improper means to acquire it; [¶] . . . Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [¶] . . . Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or [¶] . . . Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

*See* 6 Del. C. § 2001(2)(b).

Unlike the CUTSA and DUTSA, the DTSA includes an additional jurisdictional element requiring the trade secret to be related to a product or service used in, or intended for us in, interstate or foreign commerce. *See Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Despite the DTSA's additional jurisdictional requirement, it largely aligns with state trade secret laws (including the CUTSA and DUTSA), as Congress intended to maintain consistency with existing trade secret law when enacting the DTSA. *See In re Patriot National Inc.*, 592 B.R. 560, 577 (Bankr. D. Del. 2018) ("It is well-accepted that the DTSA is in general comport with state trade secret law"). The "DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).



. *See WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 847 (N.D. Cal. 2019), modified in part (N.D. Cal., Nov. 5, 2019, No. 5:18-CV-07233-EJD) 2019 WL 5722620 (holding source code can receive trade secret protection under both the

DTSA and CUTSA); *see Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1522 (1997) (citing *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (1990)) ("As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret."); *See generally*, *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *18 (Del. Ch. Jan. 29, 2010) (finding that report containing frequently updated list of sales representatives in ranked order, detailed customer lists, and curated order status logs and reports were each trade secrets under DUTSA); *Total Care Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *4 (Del. Super. Ct. Oct. 29, 2002) (finding that written compilations of medical patient data, including internal information regarding diagnoses and treatments, was a trade secret); *Technicon Data Sys. Corp. v. Curtis 1000, Inc*, 1984 WL 8268, at *10 (granting preliminary injunction on DUTSA claims regarding the alleged misappropriation of communications interface of computer system for storage and display of hospital data); *Nucar Consulting, Inc. v. Doyle*, (Del. Ch., Apr. 5, 2005) 76 U.S.P.Q.2d 1087, aff'd (Del. 2006) 913 A.2d 569, at *7; *see also ZRii, LLC v. Wellness Acquisition Group, Inc.*, (Del. Ch., Sept. 21, 2009, No. CIV. A. 4374-VCP) 2009 WL 2998169, at *11 (finding that "compilation of the names of the thousands of [] distributors and their nonpublic information, including their addresses, phone numbers, and email addresses, would take a considerable amount of time to create" and reasonably constituted a trade secret at the preliminary injunction stage).

Under the CUTSA (as well as the DTSA), actual or threatened misappropriation may be enjoined, and, in appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order. Civ. Code, § 3426.2; *and see Readylink Healthcare v. Cotton,* 126 Cal.App.4th 1006, 1017 (2005) ("*Readylink*") (former employee may be enjoined to prevent use confidential information or trade secrets); *Central Valley General Hospital v. Smith*, 162

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Cal.App.4th 501, 531 (2008) (upholding injunction requiring plaintiff to return confidential materials it obtained from defendant during due diligence for planned acquisition). CUTSA authorizes damages and injunctive relief to enjoin the "[a]ctual or threatened misappropriation" of trade secrets. Civ. Code, §§ 3426.2, subd. (a), 3426.3. This is also the case under the DUTSA. *See* 6 Del. C. § 2002.

In addition, to qualify as a trade secret under the DTSA, CUTSA, and DUTSA, the plaintiff must undertake reasonable measures under the circumstances to protect the secrecy of the information. Here, Plaintiff can establish that: ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████. *See* Civ. Code, § 3246, subd. (b); 18 U.S.C. § 1839. The evidence here demonstrates that Leyva is ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ Injunctive relief to prevent

BUCHALTER
A Professional Corporation
San Diego

1  the ███████████████████████████████ is warranted.

2  *Readylink*, *supra*, 126 Cal.App.4th at 1018.

3  **2.    Fraud – Intentional Misrepresentation Claim**

4  To prevail on its intentional misrepresentation claim, Plaintiff must show "(1)

5  a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual

6  and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220

7  Cal.App.4th 217, 230-231 (2013). In this case, in order to induce ███████████

8  ██████████████████████████████████████████

9  ██████████████████████████████████████████

10 ██████████████████████████████████████████

11 ██████████████████████████████████████████

12 ██████████████████████████████████████████

13 ██████████████████████.

14 Furthermore, AppTech actually and justifiable relied on the same when it

15 ██████████████████████████████████████████

16 ██████████████████████████████████████████

17 ██████████████████████████████████████████

18 ███████████████████. Accordingly, Plaintiff has established a likelihood of

19 success on the merits of its claim for intentional misrepresentation against Leyva.

20 **3.    Negligent Misrepresentation Claim**

21 To prove a claim for negligent misrepresentation, a plaintiff must allege the

22 following elements: "(1) the misrepresentation of a past or existing material fact, (2)

23 without reasonable ground for believing it to be true, (3) with intent to induce

24 another's reliance on the fact misrepresented, (4) justifiable reliance on the

25 misrepresentation, and (5) resulting damage." *National Union Fire Ins. Co. of*

26 *Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*, 171 Cal.App.4th 35,

27 50 (2009) (internal citations and quotations omitted).

28 Here, Plaintiff has demonstrated that Leyva's misrepresentations—to the

1 extent they were not intentional—were negligent. ██████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████.

### 4.    Conversion Claim

To prove a claim for conversion, a plaintiff must allege "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Regent Alliance Ltd. v. Rabizadeh*, 231 Cal.App.4th 1177, 1181 (2014). ██████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████.

### 5.    Unlawful and Unfair Business Practices Claim

Unfair competition is defined to include "any unlawful, unfair or fraudulent business act or practice...." Cal. Bus. & Prof. Code, § 17200. These concepts of unfair competition have been held applicable in source code cases. *See K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939, 944-945, 959, 961-962 (2009) ("appellant's statutory unfair competition claim rests squarely on its factual allegations of trade secret misappropriation"). Furthermore, unfair competition may be enjoined by California Business and Professions Code section 17200. Bus. & Prof. Code, § 17203.

Here, there is evidence 

. California's unfair competition law authorizes damages and injunctive relief to prevent "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code, §§ 17200, 17203. These types of misleading, deceptive practices are *per se* unfair, and should be enjoined.

### 6. California Penal Code Section 502 Claim

California Penal Code section 502 is a comprehensive provision concerning computer-related crimes. Under this section, it is a felony to knowingly access without permission, alter, damage, delete, destroy, or otherwise use any computer, computer system, computer network, or computer data to either plan or perform any scheme or artifice to defraud, deceive, extort, wrongfully control, or obtain data, money, or property. *See* Penal Code, § 502, subd. (c)(1). In addition, disrupting or

denying computer access to an authorized user also violates these provisions. *See* Penal Code § 502, subd. (c)(5).

████████████████████████████████████████████████████████

in violation of California Penal Code section 502, subdivision (c)(5). Therefore, Plaintiff has adequately pleaded and established a likelihood of prevailing on the merits of its California Penal Code section 502 claim.

### 7.    Breach of Contract Claim

To prevail on its breach of contract claim, a plaintiff must show (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008). The same analysis applies to a claim for a breach of a confidentiality agreement as it does to a breach of any other contract. *Id.*

████████████████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO
BUCHALTER 106271460v3

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

- ███████████████████████████████████████
█ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████
█ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████.

Accordingly, Plaintiff has established a likelihood of succeeding on the merits of its claim for breach of contract.

**C.    Risk of Immediate, Irreparable, and Substantial Harm to Plaintiff**

Plaintiff is suffering and will continue to suffer immediate, irreparable, and substantial harm in the absence of a TRO.  Since this case involves trade secret misappropriation, Plaintiff's harm is irreparable. The Ninth Circuit has held that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

This is a classic case where irreparable harm exists. ███████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████      ████████
███████████████████████████████████████████████
████████████████████████████████████.

Specifically, ██████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

████████████████████████. (*Id.*, ¶ 97.)  Businesses could suffer from disrupted cash flow, delayed payroll, and impaired vendor relationships, and these issues could cascade leading to operational failures.  (*Id.*)

██████████████████████████████████████████. (*Id.*)

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

BUCHALTER 106271460v3

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1  █████████████████████████████████████████████

2  █████████████████████████████████████████████

3  █████████████████████████████████████████████

4  █████████████████████████████████████████████

5  █████████████████████████████████████

6  In short, money damages alone would not make AppTech whole for Leyva's

7  actions.  (DeRosa Decl., ¶ 103.)  Indeed, Leyva acknowledged and agreed that a

8  █████████████████████████████████████████████

9  █████████████████████████████████████████████

10 █████████████████████████████████████████████

11 ████████████████████████.″  (Shall Decl., ¶ 20 (emphasis added).)

12 Additionally, Plaintiff is entitled to a presumption of irreparable harm.

13 "California courts have presumed irreparable harm when proprietary information is

14 misappropriated," such as has occurred here. *TMX Funding, Inc. v. Impero Techs.,*

15 *Inc.*, 2010 WL 1028254, at *8 (N.D. Cal. Mar. 18, 2010); *see W. Directories, Inc. v.*

16 *Golden Guide Directories, Inc.,* 2009 WL 1625945, at *6 (N.D. Cal. June 8, 2009)

17 (finding that it "presum[ed] that Plaintiff will suffer irreparable harm if its proprietary

18 information is misappropriated."); *see also Lillge v. Verity*, No. C 07-2748 MHP,

19 2007 WL 2900568, at *7 (N.D. Cal. Oct. 2, 2007) ("[T]he risk of losing established

20 customers to defendants' new business due to defendants' improper use of plaintiff's

21 proprietary information would obviously create lasting, irreparable harm.")

22 ████████████████████████████████████████

23 █████████████████████████████████████████████

24 █████████████████████████████████████████████

25 █████████████████████████████████████████████

26 █████████████████████████████████████████████

27 █████████████████████████████████████████████

28 █████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

BUCHALTER 106271460v3

28

PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1 ██████████████████████████████████.  Plaintiff has established

2 irreparable harm that it will suffer if Defendants are not enjoined.

3 **D.**    **Balance of Equities Unequivocally Tips in Plaintiff's Favor**

4 The balance of equities or hardships clearly weigh heavily in Plaintiff's favor

5 and in support of the issuance of the requested temporary restraining order and

6 injunctive relief. Courts "must balance the competing claims of injury and must

7 consider the effect on each party of the granting or withholding of the requested

8 relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

9 In balancing the interim harms, the Court should look at the harm to each party to

10 determine if the injunction should be granted or denied.  If the injunction is granted,

11 Plaintiff will be protected from misappropriation of its trade secrets and from unfair

12 business practices arising from Leyva's use of its Proprietary Information.



27 ████████.  This is exactly the type of situation where a court should step in and issue

28 a TRO to preserve the status quo and restrict the illegal conduct.  Therefore, the

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1  equities weigh in favor of granting the injunction Plaintiff seeks.

2        **E.**    <u>**The Sought Injunction Serves the Public Interest**</u>

3        The public interest analysis considers "whether there exists some critical
4  public interest that would be injured by the grant of preliminary relief." *Alliance for*
5  *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011).  Public policy
6  supports fair competition, not unfair competition fueled by theft and trade secret
7  misappropriation. California's Legislature and Congress have demonstrated an intent
8  to protect trade secrets by virtue of CUTSA and the DTSA.  Accordingly, the public
9  interest is served in protecting Plaintiff's trade secrets in this case.

10        **F.**    <u>**Notice to Leyva is Unwarranted Under the Circumstances**</u>

11        Where, as here, a party applies for a TRO on an *ex parte* basis, Rule 65 of the
12  Federal Rules of Civil Procedure "mandates an additional showing that: (1)
13  immediate and irreparable injury ... will result to the movant before the adverse party
14  can be heard in opposition; and (2) the movant must explain in writing the reasons
15  why notice should not be required." *A&A Int'l Apparel, Inc. v. XuI*, (C.D. Cal., Jan.
16  29, 2015, No. CV 15–644–GW(AGRX)) 2015 WL 12850544, at *2 (internal
17  citations and quotation marks omitted).  "The most common reasons for issuing an
18  *ex parte* temporary restraining order are where notice to the adversary party is
19  impossible either because the identity of the adverse party is unknown or because a
20  known party cannot be located in time for a hearing and a very narrow band of cases
21  in which ***ex parte* orders are proper because notice to the defendant would render**
22  **fruitless the further prosecution of the action**."  *Id.* (internal citations and
23  quotations omitted; emphasis added).

24        The circumstances of this case fall squarely within the third scenario
25  referenced above. ███████████████████████████
26  ████████████████████████████████████
27  ████████████████████████████████████
28  ████████████████████████████████████

████████████████████████████████████████████████████████████ .

### G.   No Security or a Minimal Security Should Issue

Leyva will not incur any costs or damages from the temporary restraining order or preliminary injunction sought here and therefore no security is required under Fed. R. Civ. P. 65(c). Leyva does not have a right to misappropriate Plaintiff's Proprietary Information, and therefore cannot suffer any harm from being enjoined from doing so. In the unlikely event that the Court requires security for the requested restraining order or injunction, it should be minimal.

Because Leyva has no legal right to engage in the conduct at issue, he will not suffer any legally recognizable injury should the preliminary injunction requested be issued. The preliminary injunction will certainly preserve the *status quo* and provide a strong disincentive for using misappropriated and recreated trade secrets.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this Court grant the application for a temporary restraining order and issue an order to show cause as to why a preliminary injunction should not issue.


DATED: October 30, 2025             BUCHALTER
                                    A Professional Corporation


                                    By: _____
                                        TRACY A. WARREN
                                        ALISSA PLEAU-FULLER
                                        CHRISTINA M. MORGAN
                                        Attorneys for Plaintiff
                                        APPTECH PAYMENTS CORP.